O:\MAXWELL FILES\Trustee (AJM) cases\Swiontek, Leo (  RE  Jan 2005)\Adversary Against Demetra Barounis\SumJudMot (final).doc
05-101-018

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| LEO F. SWIONTEK, | ) | Case No. 04-48014 |
|         Debtor. | ) | Honorable Jacqueline P. Cox |
| | ) | |
| _____ | ) | |
| | ) | |
| ANDREW J. MAXWELL, Trustee, | ) | |
|         Plaintiff, | ) | |
|     v. | ) | Adv. No. 05 A 01624 |
| | ) | |
| DEMETRA BAROUNIS, | ) | |
|         Defendant. | ) | |

## NOTICE OF MOTION

TO:   Xiaoming Wu, Esq.
       Ledford & Wu
       200 S Michigan Ave., Ste. 209
       Chicago, IL 60604

**PLEASE TAKE NOTICE** that on March 13, 2007, at 9:30 A.M., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Jacqueline P. Cox in Courtroom 619, or such judge who may be sitting in her stead, in the Dirksen Federal Courthouse, 219 South Dearborn Street, Chicago, Illinois, and shall then and there present **Trustee's Motion for Summary Judgment,** at which time and place you may appear if you see fit.  A copy of said Motion is attached hereto and is herewith served upon you.

                    Andrew J. Maxwell (ARDC #1799150)
                    Vikram R. Barad (ARDC #6277076)
                    Maxwell & Potts, LLC
                    105 West Adams, Suite 3200
                    Chicago, Illinois 60603
                    312/368-1138

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he served a copy of the foregoing Notice and Motion upon the Xiaoming Wu, Esq. (and any others having registered) pursuant to Section II(B)(4) of the Administrative Procedures for the Case Management/Electronic Case Filing System through the Court's Electronic Notice for Registrants on February 27, 2007.

                    /s/ Vikram R. Barad

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| LEO F. SWIONTEK, | ) | Case No. 04-48014 |
|         Debtor. | ) | Honorable Jacqueline P. Cox |
| | ) | |
| _____ | ) | |
| | ) | |
| ANDREW J. MAXWELL, Trustee, | ) | |
|         Plaintiff, | ) | |
| v. | ) | Adv. No. 05 A 01624 |
| | ) | |
| DEMETRA BAROUNIS, | ) | |
|         Defendant. | ) | |

<u>**TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**</u>

    Andrew J. Maxwell, Trustee, by the undersigned counsel, pursuant to Fed.R.Bankr.P. 7056, Fed.R.Civ.P. 56, and Local Bankruptcy Rule 7056-1, states the following as Trustee's Motion for Summary Judgment ("Motion"):

    1.      Trustee commenced this adversary proceeding by filing his adversary complaint (the "Complaint") against Defendant Demetra Barounis ("Defendant") on July 19, 2005.  The Complaint seeks to 1) avoid a fraudulent conveyance between Defendant and the Debtor pursuant to §544 of Title 11 U.S.C. (the "Bankruptcy Code") and Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 160/1 <u>et seq.</u>, and 2) sell real estate currently titled in Defendant's name, pursuant to §363(h) of the Code.

    2.      On September 29, 2005, Defendant filed her Answer to the Complaint.

    3.      This Court has jurisdiction over this proceeding pursuant to Title 28 U.S.C. §§ 157 and 1334, and Fed.R.Bankr.P. 7001, <u>et seq.</u>  This is a core proceeding pursuant to Title 28 U.S.C. § 157(b)(2)(A), (F), and/or (O).  Venue is proper in this Court pursuant to Title 28 U.S.C. §§ 1408 and 1409.

4.      This Motion seeks summary judgment with respect to all matters at issue in this proceeding.

5.      For the reasons set forth in the accompanying statement of uncontested facts and memorandum, it is clear no material issues of fact are in genuine dispute and the Trustee is entitled to judgment as a matter of law.  Because there are no issues of fact in genuine dispute and the Trustee is entitled to judgment as a matter of law, this Motion should be granted and summary judgment should be entered in favor of the Trustee for the relief requested in the Complaint, plus costs and interest.

**WHEREFORE,** Andrew J. Maxwell, Trustee, respectfully prays for entry of an order granting summary judgment in his favor and against Demetra Barounis, and granting such other and further relief as this Court deems just and fair.

Respectfully submitted,
ANDREW J. MAXWELL, Trustee


By:  /s/ Vikram R. Barad
One of his attorneys


Andrew J. Maxwell (ARDC #1799150)
Vikram R. Barad (ARDC #6277076)
Maxwell & Potts, LLC
105 West Adams Street, Suite 3200
Chicago, Illinois 60603
312/368-1138

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| LEO F. SWIONTEK, | ) | Case No. 04-48014 |
|         Debtor. | ) | Honorable Jacqueline P. Cox |
| | ) | |
| _____ | ) | |
| | ) | |
| ANDREW J. MAXWELL, Trustee, | ) | |
|         Plaintiff, | ) | |
|     v. | ) | Adv. No. 05 A 01624 |
| | ) | |
| DEMETRA BAROUNIS, | ) | |
|         Defendant. | ) | |

### TRUSTEE'S STATEMENT OF UNCONTESTED FACTS
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Andrew J. Maxwell, Trustee, pursuant to Local Bankruptcy Rule 7056-1, states the following as his statement of uncontested facts in support of his motion for summary judgment:

1.      This bankruptcy case was commenced by Debtor's voluntary filing of a petition for relief under Chapter 7 of the Bankruptcy Code (the "Code") on December 30, 2004 ("Petition Date").  Defendant admits this in her Answer to the Complaint at Paragraph 1, a copy of which is attached hereto and made a part hereof as Exhibit 1.

2.      Andrew J. Maxwell ("Trustee") was appointed to serve as the Chapter 7 Trustee, has qualified and has been acting as such.  Defendant admits this in her Answer to the Complaint at Paragraph 2.

3.      This Court has jurisdiction over this adversary proceeding pursuant to Title 28 U.S.C. §1334, and Fed.R.Bankr.P. 7001 et seq.  Defendant admits this in her Answer to the Complaint at Paragraph 3.

4.      Trustee commenced this adversary proceeding by filing his adversary complaint (the "Complaint") against Defendant Demetra Barounis ("Defendant") on July 19, 2005. A true and correct copy of the Complaint is attached hereto as Exhibit 2.

5.      This is a core proceeding pursuant to Title 28 U.S.C. §§157(b)(2), (A), (F) and (O) in which this Court is empowered to enter final judgment. Defendant admits this in her Answer to the Complaint at Paragraph 4.

6.       Venue is proper in this District pursuant to Title 28 U.S.C. §1409(a). Defendant admits this in her Answer to the Complaint at Paragraph 5.

7.      Defendant is a citizen and resident of this District and is not a debtor in this bankruptcy case. Defendant admits this in her Answer to the Complaint at Paragraph 6.

8.      Defendant is and at all times relevant to this Complaint was married to the Debtor. Defendant admits this in her Answer to the Complaint at Paragraph 6.

9.      Prior to August 2001 the Debtor had open credit card accounts with MBNA Bank ("MBNA"), First Card/Bank One ("Bank One"), First National Bank of Omaha ("Omaha"), and First USA Bank ("First USA"), all of which had balances due. Defendant admits this in her Answer to the Complaint at Paragraphs 7-10.

10.       On and for some time prior to August 10, 2001, the Defendant and the Debtor jointly owned real estate commonly known as 6927 West Fargo Avenue, Niles, Illinois (the "Real Estate"). Defendant admits this in her Answer to the Complaint at Paragraph 11.

11.      The Real Estate was improved with a single family house. Defendant admits this in her Answer to the Complaint at Paragraph 11.

12.      On and prior to August 10, 2001, the Real Estate was the principal residence of both the Defendant and the Debtor. Defendant admits this in her Answer to the Complaint at Paragraph 11.

13.     On and prior to August 10, 2001, Defendant and Debtor owned the Real Estate in tenancy by the entirety.  A true and correct copy of the original warranty deed issued to Debtor and Defendant obtained from the Defendant is attached hereto and made a part hereof as Exhibit 3.

14.     By document dated August 10, 2001, the Debtor conveyed and transferred his interest (the "Transfer") in the Real Estate to the Defendant.  The Transfer was recorded with the Cook County Recorder on August 14, 2001.  Defendant admits this in her Answer to the Complaint at Paragraph 12.

15.     The Debtor did not receive reasonably equivalent value in exchange for the Transfer of the Real Estate.  Defendant admits this in her Answer to the Complaint at Paragraph 13.

16.     The Transfer was of substantially all of the Debtor's assets.  Defendant admits this in her Answer to the Complaint at Paragraph 18.

17.     As of August 10, 2001, the Debtor owed debts to one or more unsecured creditors, including but not limited to MBNA, Bank One, Omaha, and First USA, whose debts remain unpaid as of the Petition Date.  Defendant admits this in her Answer to the Complaint at Paragraph 20.

18.     At all times relevant hereto there was in full force and effect in Illinois the Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 160/1 et seq.  Defendant admits this in her Answer to the Complaint at Paragraph 14.

19.     MBNA, Bank One, Omaha, and First USA became creditors of the Debtor within the meaning of section 2(d) of UFTA prior to August 2001.  Defendant admits this in her Answer to the Complaint at Paragraph 15.

20.     Defendant is an insider to the Debtor within the meaning of section 2(g)(1)(A) of UFTA.  Defendant admits this in her Answer to the Complaint at Paragraph 17.

21.     Pursuant of §544 of Title 11 U.S.C. (the "Bankruptcy Code"), the Trustee is entitled to assert the rights available under Illinois law to actual unsecured creditors of the Debtor as of August 10, 2001.   Defendant admits this in her Answer to the Complaint at Paragraph 19.

22.     On September 20, 2001, Defendant refinanced the Real Estate (the "Refinance"). See the attached settlement statement, obtained from Defendant, attached hereto as Exhibit 4.

23.     The Defendant obtained an amount not less than $48,550.12 (the "Proceeds") from the Refinance.   See the attached settlement statement, obtained from Defendant, attached hereto as Exhibit 4.

24.     The Proceeds were used to pay certain debt held by the Defendant only.   See Defendant's Responses to Trustee's Interrogatories at Page 6, Paragraphs 5, 6, and 8, a copy of which is attached hereto as Exhibit 5.

25.     Debtor continued to reside at the Real Estate after the Transfer.   This is evidenced by the first page of Debtor's bankruptcy petition indicating the location of Debtor's residence, a copy of which is attached hereto as Exhibit 6.

26.     Debtor continued to contribute to the monthly mortgage payment and utility payments as to the Real Estate after the Transfer.   In support thereof, see sample copies of Debtor's cancelled checks, obtained from Debtor, attached hereto as Exhibit 7.

27.     Based on the information presently known, partition in kind of the Real Estate between the bankruptcy estate and the joint owner Defendant is impracticable.   In support thereof, see the Trustee's Affidavit attached hereto as Exhibit 8.

28.     Based on the information presently known, a sale of the bankruptcy estate's undivided interest in the Real Estate would realize significantly less for the bankruptcy estate than sale of the Real Estate in its entirety, free of the interest of the Defendant joint owner. In support thereof, see the Trustee's Affidavit attached hereto as Exhibit 8.

29.     Based on the information presently known, the benefit to the bankruptcy estate of a sale of the Real Estate free of the interests of the Defendant joint owner outweighs the detriment, if any, to the joint owner.  In support thereof, see the Trustee's Affidavit attached hereto as Exhibit 8.

30.     Based on the information presently known, the Real Estate is not used in the production, transmission, distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.  In support thereof, see the Trustee's Affidavit attached hereto as Exhibit 8.

Respectfully submitted,
ANDREW J. MAXWELL, Trustee

By:  /s/ Vikram R. Barad
        One of his attorneys

Andrew J. Maxwell (ARDC #1799150)
Vikram R. Barad (ARDC No. 6277076)
Maxwell & Potts, LLC
105 West Adams Street, Suite 3200
Chicago, Illinois 60603
312/368-1138

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| LEO F. SWIONTEK, | ) | Case No. 04-48014 |
| Debtor. | ) | Honorable Jacqueline P. Cox |
| | ) | |
| _____ | ) | |
| | ) | |
| ANDREW J. MAXWELL, Trustee, | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 05 A 01624 |
| | ) | |
| DEMETRA BAROUNIS, | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION**
**FOR SUMMARY JUDGMENT**

Andrew J. Maxwell, Trustee, pursuant to Local Bankruptcy Rule 7056-1, states the

following as his memorandum in support of Trustee's Motion for Summary Judgment (the

"Motion"):

**DESCRIPTION OF THE PARTIES**

The Plaintiff Andrew J. Maxwell is the duly appointed Chapter 7 Trustee, has qualified

and has been acting as such in the underlying bankruptcy case, In re: Leo F. Swiontek.

The Defendant Demetra Barounis is a citizen and resident of this District and is not a

debtor in this bankruptcy case.   At all times relevant to this complaint, the Defendant was

married to the Debtor.

**JURISDICTION AND VENUE**

This Court has jurisdiction over this adversary proceeding pursuant to Title 28 U.S.C.

§1334, and Fed.R.Bankr.P. 7001 et seq.  This is a core proceeding pursuant to Title 28 U.S.C.

§§157(b)(2), (A), (F) and (O) in which this Court is empowered to enter final judgment.  Venue

is proper in this District pursuant to Title 28 U.S.C. §1409(a).

## SUMMARY JUDGMENT STANDARDS

The legal standards applicable to motions for summary judgment were succinctly set

forth in *In re Brown*, 168 B.R. 331, 334 (Bankr.N.D.Ill. 1994) (Ginsberg, J.), as follows:

> Under Fed.R.Civ.P. 56(c), made applicable to adversary proceedings by Fed.R.Bankr.P.
> 7056, summary judgment is proper if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any, show that
> there is no genuine issue of material fact and that the moving party is entitled to judgment
> as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91
> L.Ed. 2d 265 (1986).  On a summary judgment motion, the inferences to be drawn from
> the underlying facts must be viewed in the light most favorable to the party opposing the
> motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91
> L.Ed.2d 202 (1986).  There is no genuine issue for trial if the record, taken as a whole,
> could not lead a rational trier of fact to find for the non-moving party.  Matsushita Elec.
> Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d
> 538 (1986).

## LEGAL ARGUMENT

### I.

### THE TRANSFER OF THE REAL ESTATE TO THE DEFENDANT CONSTITUTES AN AVOIDABLE FRAUDULENT TRANSFER UNDER THE ILLINOIS UNIFORM FRAUDULENT TRANSFER ACT

The statute primarily at issue in this proceeding is §5 of the Illinois Uniform Fraudulent

Transfer Act (the "UFTA")[1].  740 ILCS 160/1 et seq.  Pursuant to §5 of the UFTA, a Trustee

may recover the transfer made by Defendant under two circumstances:  (1) if the Debtor made

the transfer with actual intent to defraud a creditor ("actual fraud" or "fraud in fact"); or (2) if the

Debtor did not receive reasonably equivalent value in exchange for the transfer and was

insolvent at the time of the transfer or became insolvent as a result of the transfer ("constructive

fraud" or "fraud in law").  See In re Zeigler, 320 B.R. 362, 372 (Bankr.N.D.Ill.2005).  Findings

---

[1] Trustee's power to use the UFTA is derived pursuant to §544 of the Bankruptcy Code.  Defendant does not contest
this issue.

made under the Bankruptcy Code are applicable to actions under the UFTA.   See In re Image

Worldwide, Ltd., 139 F.3d 574, 577 (7th Cir. 1998)(because the Illinois UFTA is a uniform act

which derived phrases from §548, the court may look to cases under §548 as well as cases

interpreting other states' versions of the UFTA for assistance).   Few, if any, debtors

acknowledge a transfer made as an actual fraud, so those must be proved indirectly; therefore,

almost all avoidable transfers under UFTA must proceed as constructive fraud cases.   For the

reasons set forth below, the transfer of the Real Estate constitutes an avoidable fraudulent

transfer under both actual fraud or "fraud in fact" and constructive fraud or "fraud in law."

## A.      Fraud in Fact

Pursuant to §5(a)(1) of the UFTA, "fraud in fact" or actual fraud occurs when a debtor

transfers property with the intent to hinder, delay or defraud creditors.   Id.   The UFTA sets forth

several factors more commonly known as the "badges of fraud" from which an inference of

fraudulent intent can be drawn.   Id.   §5(b) of the UFTA sets forth those factors, as follows:  (1)

the transfer or obligation was to an insider; (2) the debtor retained possession or control of the

property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or

threatened with suit; (5) the transfer was substantially all of the debtor's assets; (6) the debtor

absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration

received by the debtor was reasonably equivalent to the value of the asset transferred or the

amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after

the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or

shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets

of the business to a lienor who transferred the assets to an insider of the debtor.  740 ILCS

160/5(b).  When the "badges of fraud" are present in sufficient number it gives rise to an

inference or presumption of fraud.  In this case, factors 1,2,3,5 and 9 are present are present and are not in dispute.

As to factor 1, the transfer of the Real Estate by the Debtor was to an insider.  Defendant was the recipient of the transfer and was married to Debtor at the time of the transfer and Defendant does not dispute this[2].  Thus, factor 1 has been established.

As to factor 2, the Debtor continued to retain possession of the Real Estate even after the transfer – it was his principal residence before the transfer and it remained so after the transfer.  Debtor testified at his §341 meeting of creditors that he continued to reside in the Real Estate with Defendant even after the transfer.  In addition, Debtor continued to contribute to certain household expenses, such as payment of the mortgage against the Real Estate and various utilities.  Copies of the Debtor's cancelled checks clearly establish this and thus factor 2 has been established.

As to factor 3, while the transfer of the Real Estate may have become a matter of public record at the time it was recorded, it was effectively concealed from the Debtor's creditors to whom it would appear that Debtor's financial condition was the same as it always was – a homeowner with a prospect of increasing equity in the Real Estate.  In fact, the creditors were deceived.  Debtor's disclosure at the first meeting of creditors three years later hardly qualifies as disclosure of the transfer.  Thus, factor 3 has been established.

As to factor 5, the transfer of the Real Estate was substantially all of the Debtor's assets.  Defendant admitted this in her Answer and thus, this factor has been established.

As to factor 9, the Debtor became insolvent as a result of the transfer of the Real Estate.  The Debtor had outstanding credit card debts with MBNA, Bank One, Omaha, and First USA prior to the transfer of the Real Estate.  The Debtor continued to owe debts to those credit cards

---

[2] In fact, Defendant has admitted to being an insider within the meaning of §2(g)(1)(A) of UFTA.

as of the date of the Debtor's bankruptcy petition three years later.  Moreover, the transfer of the

Real Estate was substantially all of the Debtor's assets, the Debtor did not receive any value in

exchange for the transfer, and the Debtor has not revealed any increased income or ability to pay

his debts after the transfer.  Accordingly, the transfer of the Real Estate resulted in the Debtor

becoming insolvent.

Given all the foregoing, the presence of 5 of the 11 factors set forth under the UFTA

should be deemed sufficient to create the presumption of fraudulent intent with respect to the

transfer of the Real Estate, and this Court should rule that the transfer of the Real Estate

constitutes an avoidable fraudulent transfer within the meaning of §5(a)(1) of the UFTA.

### B.    Fraud in law

To establish a claim for "fraud in law" or constructive fraud, the Trustee must establish

that:  (1) a creditor's claim arose before the transfer, (2) the debtor made the transfer without

receiving a reasonably equivalent value in exchange for the transferred property, and (3) the

debtor either was insolvent at the time of the transfer or became insolvent as a result of the

transfer.  See In re Mussa, 215 B.R. 158, 170 (Bankr.N.D.Ill.1997).  The movant has the burden

of proving fraud-in-law by a preponderance of the evidence.  See Ziegler, 320 B.R. at 374.

In this case, all three elements have been clearly established.  First, there is no doubt that

a creditor's claim arose before the transfer of the Real Estate.  In fact, there are four creditors of

the Debtor whose claims arose before the transfer of the Real Estate; that is admitted by the

Defendant.  Second, the Debtor clearly made the transfer without receiving any reasonably

equivalent value in exchange for the Real Estate; that is admitted by the Defendant.  Last, the

transfer of the Real Estate resulted in the Debtor becoming insolvent.  Defendant has already

admitted that the transfer was substantially all of the assets of the Debtor and that the Debtor's

credit cards remained unpaid after the transfer and as of the date of the petition three years later.

The Debtor did not have any assets of any substantial value other than the Real Estate.  Further, the equity in the Real Estate at the time of the transfer was more than sufficient to pay the Debtor's credit cards.  Accordingly, there is no doubt that the transfer of the Real Estate left the Debtor insolvent.

Given all the foregoing, the uncontested facts establish that Debtor's transfer of the Real Estate to Defendant was constructively fraudulent, and this Court should rule that the transfer of the Real Estate constitutes an avoidable fraudulent transfer within the meaning of §6 of the UFTA.

## II.

### AS A RESULT OF THE FRAUDULENT TRANSFER, THE REAL ESTATE SHOULD BE SOLD FREE AND CLEAR OF ANY LIENS PURSUANT TO §363 OF THE BANKRUPTCY CODE

**A.      §363 Authorizes the Sale of Jointly Held Real Estate**

The statute primarily at issue in this proceeding is §363(h) of the Bankruptcy Code.  At all pertinent times, the relevant portions of that section have provided as follows:

(h) Notwithstanding subsection (f) of this section, the trustee may sell property under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if –

(1)    partition in kind of such property among the estate and such co-owners is impracticable;

(2)    sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3)    the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4)    such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

As to §363(h)(1), Defendant admitted in her Answer that the Real Estate is developed with a single family home.  As set forth in the Trustee's affidavit, based on the Trustee's over twenty year experience selling real estate improved with single family houses or small apartment buildings, a partition of the Real Estate would be impracticable if not impossible.[3]  Defendant has not offered any facts or law to support otherwise.  Accordingly, the Court should find that partition in kind of the Real Estate between the bankruptcy estate and the joint owner Defendant is impracticable.

As to §363(h)(2), as set forth in Trustee's affidavit, based on Trustee's over twenty year experience selling real estate improved with single family houses or small apartment buildings, a sale of the entirety of the Real Estate would realize a benefit for the estate far greater than a sale of the estate's undivided interest in that Real Estate.  As a practical matter, a sale of the estate's interest would make the buyer of that interest an equal "partner" with Defendant, creating an automatic "deadlock" of two potentially competing interests in one asset, which would pose a nearly insurmountable hurdle to sale of the undivided interest instead of the entirety of the Real Estate.  The buyer would certainly discount any purchase price for the estate's interest to reflect the litigation he or she would almost certainly need to undertake to sell the partial interest it bought.  Defendant has not offered any facts or law to suggest otherwise.  Accordingly, the Court should find that a sale of the estate's undivided interest in the Real Estate would realize significantly less for the bankruptcy estate than sale of the Real Estate in its entirety, free of the interest of the joint owner.

---

[3]  As an aside, the Chicago Tribune recently carried an article about a couple in Brooklyn involved in a divorce action in which an actual wall was constructed to divide the house because neither spouse would move out of the house.  However, that apocryphal story aside, the Court should apply common sense and take judicial notice that, in the absence of actual evidence to the contrary, single family houses in the Chicago metropolitan area cannot be legally partitioned.

As to §363(h)(3), it is undisputed that the Real Estate was substantially the main asset of the Debtor prior to the transfer of the Real Estate to Defendant. There were no other substantial assets of the Debtor to be liquidated for the benefit of his creditors.  The Trustee acknowledges that this is the Defendant's principal residence, and that it is a detriment to have to allow your house to be sold and have to move to a new residence.  However, the Defendant has received funds from prior refinancing(s) and may receive a share of funds from a sale of the Real Estate so that a replacement residence can be obtained.  If the fact that it is a residence is sufficient to defeat Section 363(h)(3), then no residence could ever be sold pursuant to this section.  In addition, as a practical matter, if the Trustee sold the estate's undivided interest in the Real Estate, which wouldn't require him to meet the standards of Section 363(h), the Defendant would likely suffer the same ultimate "detriment", *i.e.* to have the house sold, because a third party co-owner would almost certainly initiate court action in order to obtain the equity in the Real Estate. Based on the Trustee's over twenty year experience with sale of single family houses or other residences in bankruptcy, the benefit to the bankruptcy estate of a sale of the Real Estate free of the interests of the joint owner outweighs the detriment, if any, to the joint owner.  Defendant has not offered any facts or law to suggest otherwise.  Accordingly, the Court should rule that the sale of the Real Estate free of the interests of the joint owner outweighs the detriment, if any, to the joint owner.

As to §363(h)(4), as set forth in the Trustee's affidavit, based on the Trustee's over twenty year experience selling real estate improved with single family houses or small apartment buildings in bankruptcy, and information available to the general public on the website of the Cook County Assessor, the Real Estate is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

Defendant has not offered any facts or law to suggest otherwise and the Court should make that ruling.

Given all the foregoing, a sale of the Real Estate in its entirety free and clear of Defendant's interest is the only method to realize the equity in the Real Estate for the benefit of the creditors of this bankruptcy estate, and this Court should permit the sale of the Real Estate in its entirety pursuant to §363(h) of the Bankruptcy Code.

### B.    Defendant's affirmative defense is insufficient

In Defendant's Answer to the Trustee's Complaint, Defendant asserted as an affirmative defense that even if the Trustee were successful in avoiding the transfer of the Real Estate from debtor to Defendant, that because the Real Estate was previously held by Debtor and Defendant as tenants by the entirety the Trustee would not have the power to sell it because of the Illinois statute set forth as 735 ILCS §5/12-112. For the following reasons set forth below, Defendant's affirmative defense is insufficient and should be dismissed.

For Defendant's affirmative defense to succeed, the Court would be required to presume that the effect of an avoided fraudulent transfer of real estate is the re-conveyance back to Debtor and Defendant in tenancy by the entirety, as if the avoided transfer had never taken place. That presumption would be incorrect and should not be made; the transfer severed the elements necessary to maintain the tenancy by the entirety.

There is nothing in the UFTA that states or even suggests that an avoidance of a transfer of real estate automatically results in a reinstatement of the former title holding as if the avoided transaction had never occurred[4]. Such an event might actually encourage transfers of assets by

---

[4] In fact, §8 of the UFTA provides a variety of relief for a creditor if the creditor avoids a fraudulent transfer. Those remedies include the following:

(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

prospective debtors – if there was no downside after such a transfer was avoided by a trustee or creditor and the debtor could then claim an exemption, creditors would have little incentive to seek to avoid apparently fraudulent transfers.

This appears to be a matter of first impression in this district.  While Illinois courts have yet to consider the effect of a fraudulent transfer of real estate originally held in tenancy by the entirety prior to a fraudulent transfer, one court has been presented with a case similar to the facts in the case at bar, and has ruled that a transfer of real estate that is avoided does not result in the real estate being re-conveyed back into tenancies by the entireties.  See In re Goldman, 111 B.R. 230 (Bankr.E.D.Mo. 1990).

In Goldman, the Debtor and his wife transferred their interests in their real property, held in tenancy by the entirety, to their son just prior to the filing of the Debtor's Chapter 7 petition. The transfer was disclosed and in addition, the Debtor claimed a tenancy by the entirety exemption on his schedules.  The Trustee filed an avoidance action seeking to undo the transfer under §548 of the Code.  After reviewing the facts, the Court held that after the trustee avoided the transfer the real property was not re-conveyed back to the debtor and his wife in tenancy by the entirety.  According to the Goldman court, "[F]or bankruptcy purposes, the tenancy by the entireties ceased to exist at that point, because after the trustee avoids the transfer, he recovers

---

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure;

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

    (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

    (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

    (C) any other relief the circumstances may require; and

(4) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

740 ILCS 160/8.

the transferred property *for the benefit of the estate.*   11 U.S.C. §550(s).  The parties are mistaken

when they assume that the property is conveyed back to the Debtor and his wife as tenants by the

entireties."  Id. at 233.  The Goldman court reasoned that the 'entireties' were destroyed upon

severance (by the transfer) and that after the transfer is avoided the trustee was entitled to recover

for the benefit of the bankruptcy estate.  The same is true here; whatever 'entireties' existed were

voluntarily extinguished by the Debtor making the Transfer to Defendant.

The Goldman court also ruled that the Debtor was not entitled to use the tenancies by the

entireties exemption pursuant to §522(g) of the Bankruptcy Code.  Id.  In this case, although the

Defendant has asserted tenancy by the entirety as an affirmative defense, Defendant is actually

attempting to indirectly assert a tenancy by the entirety exemption (on behalf of the Debtor and

herself) as to the Real Estate, notwithstanding that Debtor has not claimed any such exemption

and Debtor is not entitled to claim any such exemption.  Under 11 U.S.C. §522(b), a debtor is

allowed to exempt certain property from property of the bankruptcy estate.  The Code provides

that a debtor may use the federal exemptions listed in §522(d), or the applicable state

exemptions, unless state law provides otherwise.  In Illinois, debtors are required to use the state

authorized exemptions.  See 735 ILCS 5/12-1201; In re Garcia, 149 B.R. 530, 533

(Bankr.N.D.Ill.1993), aff'd., 155 B.R. 173 (N.D.Ill.1993).   Although Illinois statutory provisions

regarding tenancy by the entirety are not found in the Illinois Code of Civil Procedure's

exemption sections, bankruptcy courts have held that under Illinois law, 735 ILCS §5/12-112

serves as an exemption for property held in tenancy by the entirety despite not being labeled

specifically as an "exemption".  See In re Mukhi, 246 B.R. 859, 864 (Bankr.N.D.Ill.2000); See

also In re Allard, 196 B.R., 407 (Bankr.N.D.Ill.1993).  Accordingly, this Court should construe

Defendant's affirmative defense as Defendant's assertion of the Debtor's and her tenancy by the

entirety exemption under Illinois law, and should deny that affirmative defense.

As set forth by the Goldman court, a debtor may not claim any exemption because under §522(g), a debtor may not claim an exemption in a situation where a trustee recovers property for the benefit of the estate.  See Goldman, 111 B.R. at 233.

Other courts have reached similar conclusions regarding whether a debtor may claim an exemption after a trustee recover property for the benefit of the estate pursuant to §550 of the Bankruptcy Code.  See In re Bryant, 221 B.R. 262 (Bankr.D.Colo.1998).  In Bryant, the Court held that pursuant to §522(g) of the Code a debtor may exempt property recovered by a trustee but only if such "transfer was not a voluntary transfer of such property by the debtor."  Similarly, the Tenth Circuit Court of Appeals has ruled plainly that "[P]roperty fraudulently transferred out of an estate and later recovered by the trustee cannot then be exempted by the debtor." Redmond v. Tuttle, 698 F.2d 414, 417 (10th Cir 1983).  In this case the transfer of the Real Estate was voluntary, the Defendant has not produced any facts to suggest otherwise, and neither the Debtor nor the Defendant can claim an exemption based on the former status of title to the Real Estate.  Accordingly, Defendant's affirmative defense is inapplicable and should be denied.

## CONCLUSION

In light of the undisputed facts, there is no genuine issue of material fact that the transfer of the Real Estate constitutes an avoidable fraudulent transfer within the meaning of §5 and §6 of the UFTA and that the Trustee may sell the Real Estate pursuant to §363(h) of the Bankruptcy Code.

Based on the Motion, statement of facts, exhibits, and this memorandum, the record is clear there is no genuine dispute as to any material fact and that the Trustee is entitled to judgment as a matter of law.  The Trustee therefore requests summary judgment be entered in his favor on both counts of his Complaint against Demetra Barounis, including a money judgment plus costs of suit, and interest from the date of demand for return of the transfer.

**WHEREFORE,** Andrew J. Maxwell, Trustee, prays this Court to enter summary

judgment in his favor and against Demetra Barounis, and to grant such other and further relief as

this Court deems just and fair.

Respectfully submitted,
ANDREW J. MAXWELL, Trustee

By:/s/ Vikram R. Barad
    One of his attorneys

Andrew J. Maxwell (ARDC #1799150)
Vikram R. Barad (ARDC No. 6277076)
Maxwell & Potts, LLC
105 West Adams Street, Suite 3200
Chicago, Illinois 60603
312/368-1138