IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter: 7 |
| LEO F. SWIONTEK | Case Number:  04-bk-48014 |
| Debtor. | |
| ANDREW J. MAXWELL, Trustee<br>Plaintiff, | Adversary Number:  05-ap-01624 |
| v. | |
| DEMETRA BAROUNIS<br>Defendant. | Judge:  Jacqueline P. Cox |

## MEMORANDUM OPINION ON
## TRUSTEE'S MOTION FOR SUMMARY JUDGMENT
## AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

Before the court in this adversary proceeding are cross motions for summary judgment filed by the Plaintiff, Andrew J. Maxwell, the chapter 7 trustee in Leo F. Swiontek's (the "Debtor") chapter 7 bankruptcy case and the Defendant, Demetra Barounis. The complaint consists of two counts: Count 1 alleges fraudulent transfer of real estate by the Debtor to the Defendant; Count 2 requests authority to sell the real estate in issue. For the reasons articulated herein, the court grants the Trustee's motion for summary judgment as to each count of the Complaint and denies the Defendant's motion for summary judgment.

---

[1]Because this adversary proceeding arises out of a bankruptcy case filed prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), this court's analysis, conclusions of law and statutory citations are based on title 11 of the United States Code in effect prior to BAPCPA's effective date of October 17, 2005. See generally Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 716-17 (1974)(noting that there are exceptions to the general rule that a court is to apply a law in effect at the time it renders its decision in order to prevent manifest injustice); Hospital Emp. Labor Program of Metropolitan Chicago v. Ridgeway Hosp., 570 F.2d 167, 170-71 (7th Cir. 1978)(Citing general rule that "amendatory statutes generally operate prospectively only absent a strong indication of legislative intent to the contrary," . . . especially when they disturb "matured" or "unconditional" rights or impose "unanticipated obligations.")

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a) and the Internal Operating Procedures of the United States District Court for the Northern District of Illinois 15(a).    This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H) and (N). Venue in this district is proper under 28 U.S.C. § 1409.

## PROCEDURAL HISTORY

On December 30, 2004, Debtor Leo F. Swiontek filed for relief under chapter 7 of the Bankruptcy Code ("Code"). See 04-bk-48014, Doc. 1.  Andrew J. Maxwell ("Trustee" or "Plaintiff") was appointed to serve as the trustee in the Debtor's case. See 04-bk-48014, Doc. 5. On June 14, 2005, the Trustee filed an "Initial Report of Assets" that stated that the "Trustee has found assets in this estate to be administered for the benefit of creditors, or believes there is a likelihood that such assets will be recovered within a reasonable period of time." See 04-bk-48014, Doc. 10.

On July 19, 2005, the Trustee filed an adversary complaint against Demetra Barounis seeking to avoid the Debtor's allegedly fraudulent transfer of property commonly known as "6927 West Fargo Avenue, Niles, Illinois" to Barounis under § 544 of the Code and the Illinois Uniform Fraudulent Transfer Act (the "IUFTA"). See 05-ap-01624, Doc. 1.  The complaint also seeks a court order pursuant to § 363(h) of the Code authorizing the sale of the estate's interest in the real estate as well as the interest of the co-owner, the Defendant.

On February 27, 2007, the Trustee filed a motion for summary judgment in favor of himself, in his capacity as the trustee for the estate, and against the Defendant on all counts in his complaint. See 05-ap-01624, Doc. 31. Attached to the motion is the "Memorandum in Support of Motion For Summary Judgment" and the "Trustee's Statement of Uncontested Facts in Support of Motion for Summary Judgment" as required by Local Bankruptcy Rule 7056-1. See id.

2

On May 14, 2007, the Debtor filed a motion to convert his chapter 7 liquidation case to a chapter 13 reorganization case. See 04-bk-48014, Doc. 16. The Debtor filed amended Schedules I and J along with a chapter 13 plan to support his motion to convert. See 04-bk-48014, Docs. 20, 21 & 23. On August 1, 2007, the Debtor withdrew his motion to convert his bankruptcy case. See 04-bk-48014, Doc. 24.

In lieu of filing a response to the Trustee's motion, the Defendant filed "Defendant's Motion for Summary Judgment" on July 31, 2007. See 05-ap-01624, Doc. 43. The Defendant also filed "Defendant's Statement of Uncontroverted Facts in Support of Motion for Summary Judgment" ("Defendant's Statement"), "Defendant's Memorandum of Law in Support of Motion for Summary Judgment" (the "Defendant's Memorandum") and an "Affidavit in Support of Defendant's Motion for Summary Judgment." See 05-ap-01624, Docs. 44, 45 & 46.

The court held a hearing regarding these matters on August 14, 2007 and ordered that the Defendant's motion for summary judgment would be accepted as a response to the Trustee's motion for summary judgment. See 05-ap-01624, Doc. 47. The Defendant was given until August 21, 2007 to comply with applicable local rules and to respond to the Trustee's Statement of Uncontroverted Facts.[2] See id. The order further provided the Trustee an opportunity to file a reply to the Defendant's response. See id.

In compliance with the August 14, 2007 order, the Defendant filed "Defendant's

---

[2]Local Rule 7056-2(A) states, in party that a party opposing a motion for summary judgment must file:

(2) a concise response to the movant's statement of facts that shall contain:
(a) a response to each numbered paragraph in the moving party's statement, including,
in the case of any disagreement, specific references to the affidavits, parts of the
record, and other supporting materials relied upon; and
(b) a statement, consisting of short numbered paragraphs, of any additional facts that
require the denial of summary judgment, including references to the affidavits, parts
of the record, and other supporting materials relied upon; and
(3) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(e).

Unless an opposing party opposes each averment in a movant's statement of uncontested facts, the material facts stated therein will be deemed to be admitted. See Local Rule 7056-2(B).

Response to Plaintiff's Statement of Uncontroverted Facts" ("Defendant's Statement"), which is the Defendant's response to the Trustee's Statement, on August 22, 2007. See 05-ap-01624, Docs. 49. The Trustee filed a reply to the Defendant's Statement on September 4, 2007. See 05-ap-01624, Doc 52. On September 10, 2007, the Trustee filed a reply to the Defendant's Memorandum. See 05-ap-01624, Doc. 53.

The court heard oral argument on the two motions for summary judgment on September 13, 2007. The court took the matters under advisement.

### STANDARDS FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a party seeking to recover on a claim may move, with or without supporting affidavits, for summary judgment in the party's favor. Summary judgment is only proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). See also Nebraska v. Wyoming, 507 U.S. 584, 590 (1993); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist., 314 F.3d 895, 900 (7th Cir.2002). The primary purpose of summary judgment is to avoid a useless trial and dispose of claims in which there is no genuine issue of any material fact. See Vukadinovich v. Board of Sch. Trustees of N. Newton Sch. Corp., 278 F.3d 693, 699 (7th Cir. 2002); Flynn v. Sandahl, 58 F.3d 283, 288 (7th Cir. 1995); Mintz v. Mathers Fund, Inc., 463 F.2d 495, 498 (7th Cir. 1972). The party moving for summary judgment bears the initial burden of establishing that there is no genuine issue of material fact and that summary judgment should be granted in the movant's favor as a matter of law. See Celetox, 477 U.S. at 323. In determining whether summary judgment is warranted, a court reviews the record in the light most favorable to the non-moving party and draws all reasonable inferences in a light most favorable to the non-movant. See Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1057 (7th Cir.2000); Filipovic v. K & R Express Sys., Inc., 176 F.3d 390, 395 (7th Cir.1999).

Factual disputes are genuine only when there is "sufficient evidence favoring the non-moving party for a [fact finder] to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). See also Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998)("An issue is genuine if it must be resolved at trial because the evidence, seen in the light most favorable to [the non-movant], would permit a reasonable factfinder to decide the issue in favor of [the non-movant]."). Factual disputes that are colorable, not significantly probative, or speculative are *not* genuine. See Anderson, 477 U.S. at 249-50. Applicable substantive law will determine what facts are material to the claims at issue and a fact is deemed material if it raises "disputes that could affect the outcome of the suit under governing law . . . ." See id. at 242. See also Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc., 254 F.3d 644, 650 (7th Cir. 2001); Employers Ins. of Wausau v. James McHugh Const. Co., 144 F.3d 1097, 1100 (7th Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Fritcher v. Health Care Serv. Corp., 301 F.3d 811, 815 (7th Cir.2002) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587(1986).

To survive a motion for summary judgment, a non-movant must make a sufficient showing of evidence, for each essential element of its case on which it bears the burden at trial. See Celotex Corp., 477 U.S. at 322-23; Salas v. Wisconsin Dep't of Corrections, 493 F.3d 913, 921 (7th Cir. 2007); Fed. R. Civ. Pro. 56(e). The non-movant "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 322 n.3 (citing Fed. R. Civ. Pro. 56(e)); First Commodity Traders Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1011 (7th Cir.1985). The non-movant must show that a genuine factual issue exists and is "material". See Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir.1996). "[T]he mere existence of some alleged factual dispute between

5

the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris  127 S. Ct. 1769, 1776 (2007)(quoting Anderson, 477 U.S. at 247-48).

When cross motions for summary judgment are presented, a "[court] look[s] to the burden of proof that each party would bear on an issue of trial; [ ] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." Santaella v. Metropolitan Life Ins. Co., 123 F.3d 456, 461 (7th Cir. 1997). Cross motions for summary judgment do not relieve movants of their burden as non-movants to set forth specific facts showing why summary judgment on behalf of the movant in not appropriate. See Ryan v. Chromalloy Amer. Corp., 877 F.2d 598, 603-4 (7th Cir. 1989).

When a motion for summary judgment is presented, the court's role is not to resolve factual disputes or to weigh conflicting evidence. See Anderson, 477 U.S. at 250-51.  In situations where the relevant material facts are undisputed, "the court still must ascertain that judgment is proper 'as a matter of governing law.'" John v. Gudmundsson, 35 F.3d 1104, 1112 (7th Cir. 1994).  Summary judgment cannot be granted solely because the material facts are undisputed.  See generally ANR Advance Transp. Co. v. International Broth. of Teamsters, Local 710, 153 F.3d 774, 777 (7th Cir. 1998); Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).  As stated in Moore's Federal Practice and Procedure treatise:

> [T]he movant must demonstrate that the applicable governing law requires a decision in the movant's favor. From the other perspective, to defeat summary judgment, the nonmovant must present a feasible legal theory showing that the nonmovant is entitled to relief should it prevail on the facts at trial.  Thus, to obtain a summary judgment, a party must show a prevailing legal theory, because even if material facts are not disputed or otherwise established, the controlling legal issues may be incapable of determination at the summary judgment stage of litigation, or the trier of fact may have decisions that remain regarding the interpretation of facts or the inferences to be drawn from the facts.

Moore's Manual on Fed. Practice & Proc. § 17.23[5] (2007) (footnote omitted).  See also Agustin v. Quern, 611 F.2d 206, 209 (7th Cir. 1979)(Court of Appeals noted the general

6

proposition that summary judgment as a matter of law is an inappropriate form of relief when the law is undeveloped and its proper application is not clear from the facts in the record.)

## UNDISPUTED MATERIAL FACTS

The relevant material facts are not in dispute.

At the time of his bankruptcy filing, and at all times relevant to this pending adversary proceeding, the Debtor was married to the Defendant.  See Trustee's Statement of Uncontested Facts in Support of Motion for Summary Judgment, ¶ 8 (05-ap-01624, Doc. 31), hereafter "Trustee's Statement"; Defendant's Response to Plaintiff's Statement of Uncontroverted Facts, ¶ 8 (05-ap-01624, Doc. 49), hereafter "Defendant's Response".  The Defendant did not join in the Debtor's bankruptcy petition.  See Trustee's Statement, ¶ 7; Defendant's Response, ¶ 7.

Prior to August 10, 2001, the Defendant and the Debtor jointly owned a single family home located at 6927 West Fargo Avenue, Niles, Illinois.  See Trustee's Statement, ¶ 10; Defendant's Response, ¶ 10.  This real estate was the principal residence of both the Defendant and the Debtor.  See Trustee's Statement, ¶ 12; Defendant's Response, ¶ 12.   The Defendant and the Debtor held this property as tenants by the entirety.  See Trustee's Statement, ¶ 13; Defendant's Response, ¶ 13.

On August 10, 2001, the Debtor conveyed his interest in the real estate to the Defendant. See Trustee's Statement, ¶ 14; Defendant's Response, ¶ 14.  This transfer was recorded with the Cook County Recorder on August 14, 2001.  See id.  Moreover, the Debtor did not receive reasonably equivalent value in exchange for his interest in the Real Estate.  See Trustee's Statement, ¶ 15; Defendant's Response, ¶ 15.  The Debtor has continued to reside at the real estate after the transfer.  See Trustee's Statement, ¶ 25; Defendant's Response, ¶ 25.  The Debtor has continued to contribute to the monthly mortgage payments and the utility payments on the real property since he transferred his interest to the Defendant.  See Trustee's Statement, ¶ 26; Defendant's Response, ¶ 26.

7

As of August 10, 2001, the Debtor had open credit card accounts, with balances due and owing, with MBNA Bank ("MBNA"), First Card/Bank One ("Bank One"), First National Bank of Omaha ("Omaha"), and First USA Bank ("First USA"). See Trustee's Statement, ¶ 17; Defendant's Response, ¶ 17.

On September 20, 2001, the Defendant obtained proceeds of $48,550.12 by refinancing the mortgage held against the real estate. See Trustee's Statement, ¶¶ 22 & 23; Defendant's Response, ¶¶ 22 & 23. This money was used to pay the Defendant's debts; the Debtor's debts were not paid. See Trustee's Statement, ¶ 24; Defendant's Response, ¶ 24.

### DISCUSSION

According to the Trustee and the Defendant (the "Parties") during oral argument, there is no genuine issue of material fact in dispute. Both sides argued at oral argument that their dispute rests upon a question of law, not fact. Namely, how Illinois law should be interpreted by this court to resolve the pending motions.

### Count I — Fraudulent Transfer

The Trustee's request for summary judgment is based on § 544(b)[3] of the Bankruptcy Code and § 5 of the IUFTA. Section 544(b) provides:

> (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.
>
> (2) Paragraph (1) shall not apply to a transfer of a charitable contribution (as that term is defined in section 548(d)(3)) that is not covered under section 548(a)(1)(B), by reason of section 548(a)(2). Any claim by any person to recover a

---

[3]While the Trustee's adversary complaint requests relief under § 544 of the Bankruptcy Code without specifying whether he is relying on one particular subsection over the other, documents filed in support of his motion for summary judgment clarify that he is requesting summary judgment based on § 544(b).

transferred contribution described in the preceding sentence under Federal or State law in a Federal or State court shall be preempted by the commencement of the case.

11 U.S.C. § 544(b).

Unlike § 544(a) of the Bankruptcy Code, avoiding a transfer under § 544(b) requires the existence of an *actual*, versus a *hypothetical*, creditor.[4]  See Leibowitz v. Parkway Bank & Trust (In re Image Worldwide, Ltd), 139 F.3d 574, 577-78 (7th Cir. 1998).   Section 544(b) vests the trustee with no greater rights of avoidance under applicable law than an actual creditor would have if it were to assert the claim itself.  See Grochocinski v. Knippen (In re Knippen), 355 B.R. 710, 731 (Bankr. N.D. Ill. 2006); G-I Holdings, Inc. v. Those Parties Listed on Exh. A (In re G-I Holdings, Inc.), 313 B.R. 612, 632 (Bankr. D.N.J. 2004); Daley v. Chang (In re Joy Recovery Technology Corp.), 257 B.R. 253, 267 (Bankr. N.D. Ill. 2001).   Section 544(b)(1) specifically authorizes a trustee to avoid any "transfer of interest of the debtor in property" that is *voidable* under applicable law.  See Grochocinski v. Zeigler (In re Zeigler), 320 B.R. 362, 371 (Bankr. N.D. Ill. 2005).  The applicable law that the Trustee relies upon is § 5 of the Illinois Uniform Fraudulent Transfer Act.

---

[4]Section 544(a) of the Bankruptcy Code states:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Section 5 of the IUFTA states, in relevant part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

    (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

        (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

        (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS 160/5(a).[5]

The Trustee argues that summary judgment is appropriate under both the actual fraud, or "fraud in fact", standard delineated in §5(a)(1) and the constructive fraud, or "fraud in law" standard set forth in §5(a)(2). He cites the decision issued by the Seventh Circuit Court of Appeals in Image Worldwide, Ltd., 139 F.3d 574 (7th Cir. 1998), along with bankruptcy court decisions in Zeigler, 320 B.R. 362 (Bankr. N.D. Ill. 2005) and Berland v. Mussa (In re Mussa),

---

[5]In addition to § 544 and the IUFTA, § 548(a)(1) of the Bankruptcy Code can be used under certain circumstances to avoid a debtor's pre-petition fraudulent transfer of property. However the trustee's avoidance power under pre-BAPCPA § 548(a)(1) was restricted to transfers that were made "on or within one year before the date of the filing of the petition." Under BAPCPA, this period has been extended to two years. Compared to § 544 and the IUFTA, the one year statute of limitations provided under § 548(a) would be of no assistance to the Trustee in this instance. See generally, Image Wordwide, Ltd., 139 F.3d at 576-77. The statute of limitations provided under the IUFTA for causes of actions based on § 5(a) is much greater. Under the IUFTA, cause of actions based on § 5(a)(1) must be filed "within 4 years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." 740 ILCS 160/10(a). Actions based on § 5(a)(2) must be filed "within 4 years after the transfer was made or the obligation was incurred" for causes of actions based on § 5(a)(2). 740 ILCS 160/10(b). Furthermore, section § 108(a) of the Bankruptcy Code provides a trustee with additional time to file an IUFTA action if the statute of limitations has not expired before the bankruptcy petition is filed.

10

215 B.R. 158 (Bankr. N.D. Ill. 1997), for support.

In Image Worldwide, Ltd., the chapter 7 trustee brought an adversary proceeding to recover payments the debtor made to a bank to pay down loans that were guaranteed by a third party. See 139 F.3d at 576. The trustee's complaint was based on § 544(b) of the Bankruptcy Code and § 5 of the IUFTA. The issue before the Court was how Illinois courts would interpret the phrase "reasonable equivalent value" as it is used in the IUFTA See id. at 577. Drawing parallels between § 548 of the Bankruptcy Code and the IUFTA, the Court concluded that it can look to interpretations of "reasonably equivalent value" as it has been defined in cases based on § 548 as well as cases from courts interpreting other states' versions of the Uniform Fraudulent Transfer Act to predict how an Illinois court would rule. See id. The Trustee argues under Image Worldwide, Ltd. in the pending adversary that findings made under the Bankruptcy Code are applicable to actions under the UFTA.

In Zeigler, the chapter 7 trustee filed an adversary proceeding seeking to avoid transfers of pre-petition residential real estate between the debtors and their daughter and son-in-law. See 320 B.R. at 369-70. The Trustee sought avoidance under § 544(b) of the Bankruptcy Code and §§ 5 and 6 of the IUFTA. See id. at 371-72. Analyzing each element of §§ 5 and 6(a) of the IUFTA along with supporting state and federal case law, the court found that although the transfers were avoidable under § 6(a) and the constructive fraud element under § 5(a)(2), the trustee failed to prove that the transfers constituted fraud in fact under § 5(a)(1). See id. at 375-80. The court further concluded that the trustee demonstrated all of the necessary elements under § 363(h) of the Bankruptcy Code and authorized the trustee to sell the estate's interest in the property. See id. at 383-84.

In a case similar in law but not in facts to Zeigler, the trustee in Mussa filed an adversary proceeding based, in part, on § 544(b) of the Bankruptcy Code and the IUFTA seeking to recover pre-petition transfers the debtors made of real estate held in joint tenancy, cash, stock and

11

corporate assets to their relatives. See 215 B.R. at 161. Relying on applicable Illinois case law, the court held that the trustee had established that the transfers were fraudulent under §§ 5(a)(1) and 6(a) of the IUFTA and avoidable. See id. at 167-73.

In response, the Defendant concedes that the Trustee's ability to avoid the transfer is not in dispute; nor does the Defendant dispute that the transfer has all the technical elements of a fraudulent transfer under the IUFTA. See Defendant's Memorandum, p. 2. Despite this, the Defendant argues that the transfer was not done with an intent to defraud creditors but rather to obtain a better mortgage interest rate and to pay off the Defendant's creditors.

There is no explanation or justification asserted by the Defendant for the failure to pay only the wife's debts, not the Debtor's. Defendant maintains that Illinois case law provides that "a fraudulent conveyance is void only as against creditors and the conveyance is treated as if it had not been made." See Defendant's Memorandum, at p. 3 (05-ap-01624; Doc. 45). She cites DeMartini v. DeMartini, 52 N.E.2d 138 (1943); People ex rel. Scholes v. Keithley, 80 N.E. 50 (1906); Campbell v. Whitson, 68 Ill. 240 (1873), Gayton v. Kovanda, 857 N.E.2d 929 (2006), Gilbert Bros., Inc. v. Gilbert, 630 N.E.2d 189 (1994) and MacDonald v. Estate of Gayton, 469 F.3d 1079 (7th Cir. 2006), to support her position that avoidance of the transfer restores the property to a tenancy by the entirety estate between the Debtor and the Defendant, operating to keep the real estate beyond the reach of the Trustee's avoidance power under § 544. Property held in a tenancy by the entirety estate cannot be sold to satisfy the debts of only one of the tenants. See Premier Prop. Mgmt., Inc. v. Chavez, 728 N.E.2d 476, 479 (Ill. 2000); 735 ILCS 5/12-112. See also In re Eichhorn, 338 B.R. 793, (Bankr. S.D. Ill. 2006); Tolson, 338 B.R. at 365; Allard, 196 B.R. at 408. The property, however, is not exempt from process from those debts for which both tenants share liability. See Eichhorn, 338 B.R. at 797. See also In re Giffune, 343 B.R. 883, 889 (Bankr. N.D. Ill. 2006). In Illinois, only "homestead" property owned by a husband and wife may be held in a tenancy by the entirety estate. See Premier Prop. Mgmt. Inc., 728 N.E.2d at 479; 765 ILCS 1005/1c.

12

The Trustee's reply advances a different interpretation of what he asserts is the correct application of both Illinois law and bankruptcy law. The Trustee notes that because the Defendant does not dispute that the transfer was fraudulent, he is entitled to recover the Debtor's interest in the real estate "for the benefit of the bankruptcy estate." The Trustee insists that he has identified unsecured creditors with allowable claims under the IUFTA existing at the time of the Debtor's bankruptcy filing, the creditors MBNA, Bank One, Omaha and First USA. Citing § 550(a) and § 544 of the Bankruptcy Code and the decision issued in <u>Rimmel v. Goldman</u> (In re Goldman), 111 B.R. 230 (Bankr. E.D. Mo. 1990), the Trustee contends that the tenancy by the entirety estate will not be revived once the transfer is avoided because whatever "entirety" existed prior to the transfer was voluntarily extinguished by the Debtor once the transfer was made. In addition, even if the tenancy by the entirety comes back into existence after avoidance by the Trustee, § 522(g)(1)(A) of the Bankruptcy Code prohibits the Defendant from claiming an exemption in the real estate because it was voluntarily transferred from the Debtor to the Defendant.[6]

The Defendant's argument that the real estate will revert back into a tenancy by the entirety estate rests heavily on Illinois court decisions in <u>DeMartini</u> and <u>Gilbert Bros.</u> and the Illinois and Seventh Circuit court of appeals decisions in the <u>Gayton</u> cases.

In <u>DeMartini,</u> the Illinois Supreme Court stated that:

it is well established that a transfer of property fraudulent and void as to creditors

---

[6]Section 522(g) of the Bankruptcy Code:

(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

   (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

   (B) the debtor did not conceal such property; or

   (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

13

> is nevertheless valid as between the parties thereto. . . . A conveyance of this sort
> is void only as against creditors, and then only to the extent to which it may be
> necessary to deal with the conveyed estate for their satisfaction. To this extent and
> to this only, it is treated as if it had not been made. To every other purpose it is
> good. Satisfy the creditors, and the conveyance stands.

52 N.E.2d at 141 (citations omitted). Under DeMartini, a fraudulent transfer of property is void

only as to creditors, and only to the extent necessary to deal with the conveyed estate for the

creditor's satisfaction. See Stoller v. Exchange Nat'l Bank of Chicago, 557 N.E.2d 438, 445 (Ill.

App. Ct. 1990). The Trustee, as the creditor's proxy, would recover to the extent of the debts in

the bankruptcy estate.

In Gilbert Bros, the plaintiff filed an action based, in part, on the IUFTA against a mother

and her son seeking funds in a certificate of deposit that was held in joint tenancy by her and her

husband before her husband transferred his interest to her and she in turn, transferred her interest

into a trust that named her son as trustee. See 630 N.E.2d at 192. The transfers occurred prior to

the husband's death but while a non-compete cause of action filed by the plaintiff was pending

against the husband. See id. In its fraudulent conveyance action, the plaintiff argued under § 5

of the IUFTA that the husband's transfer was fraudulent because the husband expected that a

judgment might be entered against him in the non-compete suit at the time of the transfer. See

id. The trial court dismissed the action based on the expiration of the statute of limitations. See

id. On appeal, the appellate court affirmed the trial court's ruling and added as *dictum*:

> Moreover, apart from the dismissal, the [plaintiff's] claim is moot because the
> [plaintiff] alleges that [the husband], as a joint tenant, fraudulently transferred his
> interest to the other joint tenant, his wife, and then he died. Assuming the [plaintiff]
> was successful on the merits of its claim for fraudulent transfer, the court would
> reinstate the property as it was at the time prior to the fraudulent transfer. Because
> [the husband's] death occurred prior to any judgment received by the [plaintiff], the
> property would have transferred to the surviving joint tenant at that time of death,
> extinguishing any rights the [plaintiff] may have had.

Id. at 192-93. This case does not help the Defendant, as the transferor spouse herein has not

14

died, which might result in the Defendant having title in her name before the Trustee's claims

arose.

In the Gayton case decided by the Illinois Appellate Court, husband and wife held real

estate property as joint tenants with rights of survivorship. See 857 N.E.2d at 930. A creditor of

the husband obtained a judgment of $414,000 plus court costs against the husband. See id.

Husband died shortly after the judgment was entered. See id. Shortly thereafter, the judgement

creditor recorded notice of the judgment against the property. See id. However approximately

two years prior to the judgment being entered, the husband quitclaimed his interest in the real

estate to his wife. See id. In an action against the judgment creditor to quiet title, the wife

alleged that the judgment creditor had created a cloud on the title by wrongfully recording a lien

against property that was solely owned by her. See id. The judgment creditor filed a

counterclaim alleging that the husband's transfer violated the IUFTA. The trial court ruled in

favor of the wife on her motion for summary judgment as to the counterclaim and the judgment

creditor filed an appeal. See id. Relying, in part, on Gilbert Bros. and DeMartini, the appellate

court affirmed the trial court's decision that the judgment creditor had no rights to the real estate

after it passed to the wife through rights of survivorship. In rejecting the judgment creditor's

argument that reversal of fraudulently transferred property held in joint tenancy results in a

tenancy in common, the court stated:

> Although we are cognizant of the principle that when a joint tenant acts to destroy
> any of the unities of joint tenancy, including the conveyance of his or her interest in
> the estate, the estate changes into a tenancy in common and any right of survivorship
> is extinguished (Klajbor v. Klajbor, 406 Ill. 513, 517, 94 N.E.2d 502 (1950)), we do
> not believe that this general principle is intended to apply to situations where there
> is a fraudulent transfer of a joint tenant's interest in the property.
>
> . . .
>
> Similarly here, assuming that [the husband's] conveyance of his interest in the
> property to [his wife] was fraudulent, the court should treat the property as if the
> fraudulent transfer had not been made. Therefore, subsequent to [the husband's]
> transfer of his interest to [his wife] and prior to [the husband's] death, [husband and
> wife] owned the property in joint tenancy.

15

Id. at 932.

In a similar case involving the same conveyance between the husband and wife involved in the state court Gayton case, the Seventh Circuit Court of Appeals addressed the same issue albeit with a different judgment creditor. Addressing the issue of what effect the IUFTA would have on the transfer if it was determined to be fraudulent, the Court held that the IUFTA would "nullify the transfer and the property would be restored to the joint tenancy with right of survivorship." See Gayton, 469 F.3d at 1081 (citing Gayton, 857 N.E.2d at 932; Gilbert Bros., 630 N.E.2d). Moreover, the Court ruled that it "would treat the property as though the fraudulent transfer had not occurred." Id. (citing Gayton, 857 N.E.2d at 932; DeMartini, 52 N.E.2d at 141).

Although these decisions may hold some merit in proceedings rooted purely in state law without regard to federal statutes, their collective force loses some of its effect when the issues are part and parcel of a bankruptcy case. The court finds that the Trustee's interpretation of §§ 544, 550(a) and 522(g) of the Bankruptcy Code and their impact in this proceeding, which is guided to a certain extend by state law, is correct and rests on solid legal ground.

Once a bankruptcy case is commenced, an estate is created that generally includes, subject to certain exceptions not relevant here, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Supreme Court noted in Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 78 (1989), that the bankruptcy estate includes "[a]ny interest in property that the trustee recovers under" the provision authorizing actions to recover fraudulently transferred property. Included in the bankruptcy estate, at least initially, is a debtor's interest in entirety property. See Matter of Paeplow, 972 F.2d 730, 737 (7th Cir. 1992); Matter of Hunter, 970 F.2d 299, 305 (7th Cir. 1992). Unless federal interests demand a different result, a debtor's interest in property is defined and created by state law. See Butner v. United States, 440 U.S. 48, 55 (1979). Section 522(g)(1) of the Code is a statute that demands a

different result.

Notwithstanding § 541 of the Bankruptcy Code which makes the debtor's property the estate's property, § 522(b) allows a debtor to exempt certain property from the estate and render it unavailable for distribution by the trustee to the debtor's creditors. See Owen v. Owen, 500 U.S. 305, 308 (1991). To the extent that a debtor does not claim an exemption in his property, the bankruptcy trustee has control over all property of the estate. See Fowler v. Shadel, 400 F.3d 1016, 1016 n.1 (7th Cir. 2005); 11 U.S.C. § 704(a)(1). Section 522(b)(2)(B) of the Bankruptcy Code preserves a debtor's right to exempt property held in a tenancy by the entirety to the extent allowed under applicable nonbankruptcy law. [7] "[C]ongress intended entirety property to enter the bankruptcy estate and to pass out of the estate if subject to an exemption, and if claimed by the debtor on his or her bankruptcy schedules." Matter of Paeplow, 972 F.2d 730, 737 (7th Cir. 1992). Section 522(b)(2)(B) applies to debtors located in states that prohibit debtors from utilizing the federal bankruptcy exemptions outlined in § 522(d). See In re Tolson, 338 B.R. 359, 364 (Bankr. C.D. Ill. 2005). Illinois is one of the states that has elected to "opt out" of the federal bankruptcy exemption scheme and requires debtors in bankruptcy cases to utilize only those exemptions allowed under Illinois law. See Clark v. Chicago Mun. Emp. Credit Union, 119 F.3d 540, 543 (7th Cir. 1997); 735 ILCS 5/12-1201. With respect to the property at issue in this proceeding, "applicable nonbankruptcy law" referenced in § 522(b)(2)(B) refers to Illinois

---

[7]Section 522(b)(2)(B) states:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. [ . . .]—

. . .

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and
(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

law.  See In re Allard, 196 B.R. 402, 408 (Bankr. N.D. Ill. 1996).  The Debtor has not exempted the property in issue on his Schedule C; he has not claimed an exemption based on the jointly held property.

A small number of courts that have analyzed this issue within the context of property transferred pre-petition out of a tenancy by the entirety estate, have permitted the trustee to avoid the transfer and have held that the property does not revert back into a tenancy by the entirety estate.  See e.g., Goldman, 111 B.R. 230; Baker v. Rotunda (In re Rotunda), 55 B.R. 386 (W.D. Pa. 1985).  A debtor is statutorily prohibited under § 522(g) of the Bankruptcy Code from claiming an exemption in property recovered under § 550 if the conveyance was voluntary.[8]  This provision makes the Defendants reversion position untenable.  See generally United States Const., art. 6, cl. 2 (Supremacy Clause); Wabash Valley Power Ass'n, Inc. v. Rural Elec. Admin., 988 F.2d 1480, 1485 (7th Cir. 1993)("When the federal government acts within its constitutional authority, it is empowered to preempt state laws to the extent it believes such action to be necessary to achieve its purposes.")

---

[8]Under the "No Harm, No Foul" doctrine, a minority of courts have held that if the pre-petition transfer of exemptible property does not adversely affect creditors in that the property would not have been available for distribution to creditors if the transfer had not occurred because the property was fully exemptible, the pre-petition transfer does not diminish what is available for distribution to creditors.  As such, the trustee cannot avoid the transfer.  See e.g., Bear, Sterns Sec. Corp. v. Gredd, 275 B.R. 190 (S.D.N.Y. 2002); Kapila v. Fornabaio (In re Fornabaio), 187 B.R. 780 (Bankr. S.D. Fla. 1995); Malone v. Short (In re Short), 188 B.R. 857 (Bankr. M.D. Fla. 1995); T.R. Press, Inc. v. Whitcomb (In re Witcomb), 140 B.R. 396 (Bankr. E.D. Va. 1992); Jarbor v. Treiber (In re Triber), 92 B.R. 930 (Bankr. N.D. Okla 1988); Tavormina v. Robinett (In re Robinett), 47 B.R. 591 (Bankr. S.D. Fla. 1985); Nolan v. Turner (In re Turner), 45 B.R. 649 (Bankr. S.D. Ohio 1985).  A majority of courts that have addressed this issue have rejected this doctrine based, in part, on the plain language of §§ 541(a) and 522(g) of the Bankruptcy Code.  These courts allow a trustee to avoid a debtor's pre-petition transfer of property that ordinarily would have been exempt but for the transfer.  See e.g., Tavenner v. Smoot, 257 F.3d 401 (4th Cir. 2001); Barbera v. Nathan (In re Barbera), 156 F.3d 1228 (6th Cir. 1998)(UNPUBLISHED); Satterfield v. Mahaffey (In re Mahaffey), 91 F.3d 131 (4th Cir. 1996)(UNPUBLISHED); Davis v. Davis (In re Davis), 911 F.2d 560 (11th Cir. 1990); Fox v. Smoker (In re Noblit), 72 F.3d 757 (9th Cir. 1995); Redmond v. Tuttle, 698 F.2d 414 (10th Cir. 1983); Hitt v. Glass (In re Glass), 164 B.R. 759 (B.A.P. 9th Cir. 1994); Future Time, Inc. v. Yates, 26 B.R. 1006 (M.D. Ga. 1983); In re Yasipour, 238 B.R. 289 (Bankr. M.D. Pa. 1999); Goldberg v. Torell (In re Rundlett), 149 B.R. 353 (Bankr. S.D.N.Y. 1993); Lasich v. Estate of A.N. Wickstrom (In re Wickstrom), 113 B.R. 339 (Bankr. W.D. Mich 1990); In re Gingery, 48 B.R. 1000 (Bankr. D. Colo. 1985); Warsco v. Ryan (In re Richard), 92 B.R. 369 (Bankr. N.D. Ind. 1988); Reigle v. Leinheiser (In re Leinheiser), 51 B.R. 164 (Bankr. E.D. Pa. 1985);  Tanton v. Nolen (In re Nolen), 40 B.R. 6 (Bankr. M.D. Ala. 1984).

The Trustee's avoidance of the August, 2001 transfer to the Defendant does not result in a reversion to a tenancy by he entirety.

### Count II — Sale of Real Estate

Section 363(h) allows the sale of property of the estate, including property held in tenancy by the entirety. It provides:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

This effort to sell the estate's interest and the Defendant's interest in the real estate is based on the assertion that partition in kind is impracticable. The court finds that partition of the marital home is impracticable; no buyer is likely to purchase a partial interest in a residence where others live. See Peterson v. Lewis (In re Jenkins), 347 B.R. 77, 84-85 (Bankr. N.D. Ill. 2006); Neylon v. Addario (In re Neylon), 53 B.R. 335, 338 (Bankr. Mass. 1985). In any event, the Defendant has admitted that partition in kind of the real estate is impracticable. See Defendant's Response ¶ 27.

19

The Trustee must also show that sale of the real estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of co-owners. A purchaser of an undivided interest in a family residence can justifiably command a price well below market value. See generally Jenkins, 347 B.R. at 85. Common sense informs that such a purchaser would be hard to come by. Collier on Bankruptcy notes that "[i]n single-family residence cases, this condition is easily satisfied. Courts recognize that the co-owner's continued residence at the property will chill any interest in purchasing the debtor's interest alone . . . [C]ourts have been willing to take judicial notice, under Fed. R. Evid. 201, that a sale of the debtor's undivided interest would generate less for the estate than a sale of the entire property." Collier on Bankr. § 363.08[5] (15th ed.). This court takes judicial notice of this proposition pursuant to Fed. R. of Evidence 201.

The Trustee argues and the court agrees that the benefit of a sale of the real estate outweighs the detriment to the Defendant co-owner. Where, as here, the real estate is the only source of funds to pay the Debtor's creditors, the detriment to the co-owner is outweighed by the benefit to the estate. See In re Harris, 155 B.R. 948 (Bankr. E.D. Va. 1993). The court also finds that the sale of the real estate is justified due to the Defendant's ability to secure other housing with her portion of any sale proceeds and the funds she received when the property was refinanced in September 2001. The Debtor currently earns $9,500 a month. See Debtor's June 25, 2007 Amended Schedule I. The Defendant will not be rendered homeless by a § 363(h) sale.

Summary Judgment is entered in favor of Plaintiff, Trustee Andrew J. Maxwell, and against Defendant, Demetra Barounis, herein on both Counts I and II of the adversary complaint. The transfer in issue is avoided under § 544(b) of the Code. The property does not revert to a tenancy by the entirety upon avoidance. Sale of the estate's interest and the co-owner's interest is hereby allowed pursuant to § 363(h) of the Code.

The Defendant's Motion for Summary Judgment is DENIED.

20

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rule of Bankruptcy Procedure.  Separate orders shall be entered pursuant to Rule 9021 of the Federal Rule of Bankruptcy Procedure.

Dated:  October 3, 2007                    ENTERED:


_____
Jacqueline P. Cox
United States Bankruptcy Judge